# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**MELISSA SUE FOLAND HOWARD,**

**Plaintiff,**

**v.** **Case No: 6:25-cv-1903-DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

______________________________________/

## MEMORANDUM AND OPINION

**THIS CAUSE** is before the Court on Claimant's appeal of an administrative decision denying the application for disability insurance benefits and supplemental security income. In a decision dated October 11, 2024, the Administrative Law Judge (ALJ) found that Claimant had not been under a disability, as defined in the Social Security Act, from September 13, 2020, through the date of the decision. R. 1077.

Having considered the parties' briefing and being otherwise fully advised, the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **AFFIRMED**.

### I. Issues on Appeal

Claimant raises one issue on appeal related to the ALJ's analysis on the persuasiveness of medical opinions and the assessment of Claimant's Residual Functional Capacity (RFC). Doc. 19. The RFC is as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and/or walk for 4 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. She can occasionally stoop, kneel, crouch, crawl and balance (on uneven terrain). She can

> have occasional exposure of temperatures over 90 degrees Fahrenheit. She can have no concentrated exposure to humidity, wetness, or vibration. She is to have no exposure to unprotected heights or dangerous moving machinery. She can occasionally perform overhead reaching and frequent reaching in all other directions bilaterally. The claimant is able to perform simple work tasks and have occasional interaction with the public, coworkers, or supervisors. She can also have occasional changes in a work setting.

R. 1067.

Within the one issue, Claimant includes five sub-issues related to the ALJ's alleged error in evaluating the supportability and consistency factors of the persuasiveness assessment. Doc. 19. The Court will separately address each sub-issue.

## II. Legal Standard

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo.*" *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). The Social Security Administration revised its regulations regarding the consideration of medical evidence. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). The revised regulations require that an ALJ apply the same factors in the consideration of the opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). The ALJ will assess the persuasiveness of a medical source's opinion in light of five factors: 1)

supportability; 2) consistency; 3) relationship with the claimant;[1] 4) specialization and 5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c); 416.920c(c).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those two factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis—the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1). The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1).

Courts have found that "[o]ther than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citing *Mudge v. Saul*, 2019 WL 3412616, at *4 (E.D. Mo. July 29, 2019)).

---

[1] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

## III. Discussion

Claimant contends that the ALJ failed to adequately address the supportability and consistency factors for the opinions of Theodora Coffman, Ph.D.; Augusto de Leon, M.D.; Todd Gates, D.O.; Ashley Archer, APRN; and state agency physicians. Doc. 19. "Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021). "Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records, and (2) consistent with the other evidence of record." *Tocco v. Comm'r of Soc. Sec.*, 2022 WL 3362863, at *7 (M.D. Fla. July 28, 2022), *report and recommendation adopted*, 2022 WL 337665 (M.D. Fla. Aug. 15, 2022) (citing Cook *v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at*3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021)). The undersigned is not persuaded that Claimant is entitled to relief.

### A. Dr. de Leon

With respect to Dr. de Leon, Claimant was referred to the state agency for a consultative examination. The record reflects that Claimant's chief complaint was chronic left ankle pain, chronic neck and shoulder pain, morbid obesity, and multiple mental diagnosis. R. 713. Dr. de Leon opined that Claimant has limitations in sitting and standing, which could be performed occasionally due to back, ankle, and foot pain. R. 718.

Claimant contends that the ALJ erred in finding Dr. de Leon's opinion to be unpersuasive based on the normal findings in the exam because the RFC is assessed on the sustained work-

related physical and mental activities in a work setting. Doc. 19 at 19. Claimant argues that the ALJ did not account for the fluctuation in symptoms when considering the consistency of Dr. de Leon's opinion with the medical record. *Id*. at 19 to 20.

The undersigned finds that the ALJ's analysis of Dr. de Leon's is sufficient. The ALJ's assessment is as follows:

> Augusto de Leon, M.D., examined the claimant in December of 2020. (Exhibit B13F) He assessed the claimant with chronic left ankle pain, chronic neck and shoulder pain, morbid obesity, posttraumatic stress disorder, depression, and borderline personality disorder. He stated the claimant can only occasionally sit and stand. (Exhibit B13F, page 7) He was of the opinion the claimant can only occasionally walk. He stated she can lift a maximum of ten pounds. He noted difficulty with reliably completing tasks. (Exhibit B13F, page 8) The degree of limitation identified by Dr. de Leon is not supported by his own examination. He noted in his examination that the claimant functioned relatively well in many respects: he stated she had 5/5 grip strength and 5/5 strength in all extremities; walking was normal and without the use of an assistive device; gait was normal. (Exhibit B13F, pages 4, 5) Normal ranges of motion were noted. (Exhibit B13F, pages 6, 7) She was well-groomed, alert, fully oriented, in no acute distress, cooperative, and responded adequately to questions and commands (Exhibit B13F, page 4). He noted the claimant's report that she could cook, prepare meals, shop, bank, and drive (Exhibit B13F, page 2). Moreover, Dr. de Leon's opinion is not consistent with other evidence; no other source has identified the degree of limitation identified by Dr. de Leon. The claimant's treatment for mental and physical impairments has been relatively conservative and findings minimal. (Exhibits B1F, B2F, B5F, B10F, B14F, B28F, B33F-B35F) The undersigned has found Dr. de Leon's report to be no more than partially persuasive. Specifically, limitation on standing and walking is warranted based on imaging of the claimant's ankle, but gait was mostly normal on examination and the claimant had no significant treatment for her ankle. Moreover, more recent evidence of acute impaction fractures of the left knee combined with the claimant's obesity also warrant some limitation in standing, walking (Exhibit B29F, B34F, page 24). Additionally, while the limited range of shoulder motion suggests limitation in reaching and lifting/carrying, imaging and clinical findings do not support greater limitations than outlined in the residual functional capacity (Exhibits B10F, B13F, B14F, B34F, page 24).

R. 1073. While Claimant is correct that the ALJ found that "normal ranges of motion were noted"—a statement supported by citations to the record—the ALJ considered the report on the examination as a whole and sufficiently explained how the record does not support the limitations.

Despite Claimant's contention that the ALJ failed to take the fluctuating symptoms into account, the ALJ found that some limitations on standing, walking, reaching, lifting, and carrying are warranted, which is reflected in the RFC. The ALJ also considered the other record evidence for treatment. Overall, the Court finds that the ALJ thoroughly discussed Dr. de Leon's record and adequately articulated the reasons why she discounted the persuasiveness of the opinion.

Further, Claimant does not discuss the impact the assigned error had on the disability determination. Claimant asserts that "the above statement of facts shows [Claimant] having difficulty standing and walking for years due to pain and swelling in the left ankle and left knee." Doc. 19 at 20. Claimant states that the RFC assessment relates to an individual's ability to do the sustained work on a regular and consistent basis, which means 8 hours a day, for 5 days a week, or an equivalent work schedule. Doc. 19 at 19 to 20.

Claimant, however, does not explain how the ALJ's error effects the ALJ's decision or the RFC. In other words, assuming the ALJ did not account for the fluctuating symptoms as Claimant asserts, Claimant fails to adequately discuss how the existing limitations found in the RFC would be different if the ALJ did not err. *See Viverette v. Comm'r of Soc. Sec*, 13 F.4th 1309, 1317-18 (11th Cir. 2021) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.") (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *see also Bratton v. O'Malley*, 2024 WL 750574, at *5 (M.D. Ala. Feb. 23, 2024) (to demonstrate that an ALJ's failure to explain the consistency factor was harmful, "a plaintiff must show that had the ALJ given further explanation, he would have adopted additional limitations"). Accordingly, Claimant has not demonstrated entitlement to relief with respect to the ALJ's treatment of Dr. de Leon's opinion.

The Court also notes that Claimant argues in the Reply that the ALJ based the persuasiveness assessment on one examination "ignoring the inconsistency with other records such as [Claimant's] 'complete tear of the calcaneofibular ligament.'" Doc. 24 at 3 to 4. First, while the statement relates to Dr. de Leon's opinion, this particular argument was not raised in the initial brief, and "[i]ssues not raised in an initial brief are deemed forfeited and will not be addressed absent extraordinary circumstances." *Raper v. Comm'r of Soc. Sec.*, 89 F. 4th 1261, 1274 (11th Cir. 2024) (quoting *Anthony v. Georgia*, 69 F.4th 796, 807 (11th Cir. 2023)). Second, assuming the argument is not new, it appears Claimant is attempting to have the Court re-weigh the evidence. The Court may not do so. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (the court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Secretary"). In sum, the Court is not convinced that the ALJ failed to adequately evaluate Dr. de Leon's opinion.

**B. Dr. Coffman**

As to Dr. Coffman, the ALJ found the opinion to be unpersuasive because it was vague and not well explained. R. 1071. Claimant argues that the ALJ's finding was made in error because an ALJ cannot substitute her own hunch or intuition for Dr. Coffman's diagnoses. Doc. 19 at 18 (citing *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992); *Hillsman v. Bowen*, 804 F.2d 1179, 1182) (11th Cir. 1986)). Claimant asserts that Dr. Coffman describes a sheltered work environment and non-competitive employment. *Id*.

As an initial matter, the Court finds that Claimant's argument itself is rather vague and raised in a perfunctory manner. Even if the ALJ is not permitted to substitute her lay "intuition" of the evidence, it is not clear how the ALJ did so by determining Dr. Coffman's opinion was not well-explained.

Also, Claimant improperly includes within the Reply an issue related to Dr. Coffman's opinion that is not in the initial brief. Claimant states in the Reply that when Dr. Coffman opined that Claimant needs an individualized accommodation, "Dr. Coffman is clearly describing a sheltered workshop." Doc. 24 at 2. Claimant explains that the regulations describe work done in a sheltered workshop as not substantial gainful activity, and "the vocational expert testified that anything about 12% off-task and no more than 10 absences a year is work preclusive." *Id*. at 2 to 3. Claimant offers that if she was aggressive and in need of isolation from others, the accommodation requires a sheltered workshop and is not competitive work. *Id*. at 3. Again, none of this is in the initial brief. Claimant mentions in the brief that Dr. Coffman is "describing a sheltered work environment," but the issue is not presented in the manner discussed in the Reply.

In any event, even if the Court takes the initial brief and the additional discussion found in the Reply into consideration, the Court finds that the ALJ adequately described how Dr. Coffman's opinion was vague and not well-explained, even providing examples and citation to the record in support of the finding. R. 1071. Notably, the ALJ also stated that "[n]evertheless, the undersigned has determined based on the totality of the record that limitation to no more than occasional interaction with others, occasional work setting changes, and simple work tasks is appropriate to account for the combined effects of the claimant's mental health impairments." *Id*. Again, in support of this finding, the ALJ included examples and discussed the inconsistencies in Dr. Coffman's record and determined that Dr. Coffman's opinions were not well-supported by other evidence. R. 1071-72. The ALJ provided a thorough examination of Dr. Coffman's opinion and sufficiently articulated the reasons for finding the opinion to be unpersuasive. *See Baker v. Comm'r of Soc. Sec.*, 2023 WL 4946510, at *5 to 6 (M.D. Fla. Aug. 3, 2023) (finding that the ALJ applied the proper standard when determining that an opinion was inconsistent with the record

evidence where the treatment notes only covered a limited time-period, were not well explained, and were nonspecific).

**C. Dr. Gates**

Claimant also contends that the ALJ erred in her analysis of Dr. Gates' opinion. In the initial brief, Claimant provides a summation of the medical opinion and states that the ALJ "points to some normal findings by Dr. Gates." Doc. 19 at 21 to 22. Claimant then states that "the court in *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 194 (11th Cir. 2021) required an ALJ to take into account 'the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace.'" *Id.*

The Court finds that Claimant's perfunctory statement of what an ALJ is required to do does not assist the Court, and the issue is deemed waived. *See Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, at 777 n.2 (11th Cir. 2016) (stating that a claimant's perfunctory argument was arguably abandoned); *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

Assuming *arguendo* waiver has not occurred, the Court still finds that the ALJ sufficiently considered Dr. Gates' opinion. The ALJ, at length, described Dr. Gates' findings and determined that the opinion is not well-supported. R. 1073. In addition to the ALJ's reliance on "normal findings," the ALJ considered Dr. Gates' treatment notes and found that the statements were inconsistent with Claimant's medication/treatment regimen, reported benefits of conservative treatment, and functioning in daily activities. R. 1074. The ALJ also determined that Dr. Gates' opinion was inconsistent with treatment notes from other providers. *Id.* In short, the ALJ's

consideration of Dr. Gates' opinion was sufficient and, *again*, Claimant fails to explain how the alleged error was not harmless.

The Eleventh Circuit has explained that "[r]emand is unwarranted unless an error creates fundamental 'unfairness' or 'prejudice.'" *Raper*, 89 F.4th at 1277 (quoting *Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991)); *see also Flowers v. Comm'r, Soc. Sec. Admin.*, 97 F.4th 1300, 1307 (11th Cir. 2024) (finding harmless error where the claimant "failed to show that his argument would make any difference to his application for disability benefits") (citing *Raper*, 89 F.4th at 1274 n.11); *Acosta v. Acting Comm'r of Soc. Sec.*, 2025 WL 1672408, at *2 (11th Cir. June 13, 2025) ("If a claimant would not be entitled to benefits even absent an alleged error, that error is considered harmless.") (citing *Flowers*, 97 F.4th at 1307-08). Claimant's conclusory statement regarding what the ALJ was required to account for does not address how the ALJ's treatment of Dr. Gates' opinion impacts the RFC or the ALJ's disability determination. Accordingly, Claimant has not established that relief is warranted.

**D. APRN Archer**

Claimant also argues that the ALJ failed to consider APRN Archer's report or include it within the RFC. Doc. 19 at 20 to 21. Claimant states that "Nurse Archer opined that whenever the [Claimant] is resting, she should raise her legs up (Tr. 1504)." *Id*. at 20. In particular, Claimant quotes the following from APRN Archer's report: "Try to keep the swollen area higher than the level of your heart. Take breaks from standing or sitting in one position. Walk around to increase the blood flow in your lower legs. Move your feet and ankles often while you stand, or tighten and relax your leg muscles." Doc. 19 at 20 to 21 (quoting R. 1504). Since the ALJ did not discuss this "opinion," Claimant argues that the ALJ committed error.

The Court disagrees. Specifically, Claimant fails to provide an analysis or sufficient citation to authority in support of this argument and makes no attempt to address the harm in the ALJ's failure to consider this "opinion." Claimant's conclusory statement that the ALJ does not discuss the "opinion" is insufficient, and Claimant's general citation to 20 C.F.R. § 404.1545(a)(3) is perfunctory in nature.

But assuming Claimant's argument is not waived, the Court does not agree that the ALJ failed to consider an "opinion." A "medical opinion" is "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: . . . (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513(a)(2).

The Court agrees with the Commissioner that APRN Archer's statement on what Claimant can do to perhaps alleviate symptoms was not a medical opinion. Accordingly, the ALJ was not required to consider it.[2]

---

[2] Claimant states in the Reply that APRN Archer is an acceptable medical source, and her instructions should be considered a medical opinion "that would prevent prolonged sitting and standing which is required in certain jobs." Doc. 24 at 5. Again, even if APRN Archer has provided a medical opinion, Claimant's argument in support of this sub-issue is wholly conclusory

**E. State Agency Psychologists**

Finally, Claimant argues that the ALJ's analysis with respect to the non-examining state agency physicians was insufficient because the ALJ did not discuss the consistency factor in the persuasiveness assessment. Doc. 19 at 22 to 24. Claimant's argument relates to the ALJ's analysis of these opinions in comparison to Dr. Gates' opinion. *Id*. at 23. Again, the Court finds that Claimant has waived this argument because Claimant does not provide a sufficient analysis. The entirety of Claimant's argument is as follows:

> In this case, the ALJ finds the opinions of non-examining state agency psychologists more persuasive than the opinions of Dr. Gates (Tr. 1074). The ALJ does not discuss the consistency factor adequately since these opinions are inconsistent with later opinions by Dr. Gates.

Doc. 19 at 22 to 23. Yet, Claimant does not identify what the non-examining psychologists and Dr. Gates' "later" opinions are or how there is an inconsistency. This statement along with the recitation of case law for three pages with no analysis does not assist the Court.

Also, waiver aside, the Court finds that the ALJ's analysis related to the non-examining physicians on the consistency factors was sufficient. In finding the opinions to be persuasive, the ALJ stated that the psychologists' opinions are consistent with other evidence including Claimant's own complaints, other physician's observations, Claimant's treatment, Claimant's daily activities, and presentation at examinations. R. 1074 to 1075.

The ALJ found with respect to Dr. Gates' opinion that "[n]o other source has identified the specific and extreme degree of limitation identified by Dr. Gates." R. 1073. Also, the ALJ found the psychologists' opinion to be persuasive in part based on information reflected in Dr. Gates' record. R. 1075 (citing Ex. B33F-B35F). "Ultimately, an ALJ's explanation of consistency and

---

and otherwise insufficient. The ALJ put restrictions within the RFC related to sitting and standing and Claimant does not explain how any error is not harmless.

supportability is sufficient if it allows the court 'to undertake a meaningful review of whether [the ALJ's] reasoning was supported by substantial evidence.'" *Walker v. Kijakazi*, 2022 WL 3686707, at *5 (N.D. Fla. July 25, 2022) (quoting *Pearson v. Comm'r Soc. Sec.*, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 3663073, at *2 (S.D. Miss. Aug. 18, 2021)). And here, the ALJ adequately addressed her evaluation of Dr. Gates and the psychologists' opinions and adequately supported the persuasiveness determinations for both. Reading the ALJ's decision as a whole, the Court finds that the ALJ explained why he discounted Dr. Gates' opinion and found the state agency psychologists' opinions to be consistent with the other evidence of record. *See Nixon v. Kijakazi,* 2021 WL 4146295, at *5 (M.D. Fla. Sep. 13, 2021) ("Although the ALJ did not explicitly discuss the particular opinion's supportability and consistency as required by the Regulations, when read in context, it becomes evident the ALJ did not find the opinion supported by or consistent with the balance of the evidence."). The Court is not persuaded that relief is warranted.

## IV. Conclusion

For the foregoing reasons, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and
2. The Clerk is directed to enter judgment for the Commissioner, terminate any pending motions, and close the case.

**ORDERED** in Orlando, Florida on July 22, 2026.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties